The next case up this afternoon is 411-0603, People v. Seth R. Hansen. For the appellant is Luke McNeil. For the appellee is Leif Lorton. Is that pronounced correctly, sir? Yes. Okay. Mr. McNeil, you may proceed, sir. Long time no see. May it please the court, counsel? Counsel. Deputy Kevin Ayers got a dispatch that a truck was spinning circles in the middle of the road in Fielden, Illinois. The description provided to him was that it was a black truck with a decal or a sticker across the back window reading, All Types Landscaping, and there was a black dog in the back of the truck. This initial 911 call began with a minor. The minor also added that he thought there was a child in the backseat of the truck. The mother also confirmed the minor's report and added that the truck kept hot-rodding up and down the streets in Fielden. She doubted that there was a child in the backseat of the truck but did think that there was another person in the cab. She also gave her name and her son's name and her phone number to the 911 dispatch. A few minutes after that, the minor again called 911 to report that the same truck that was spinning donuts in the road had left Fielden and headed eastbound on Route 16 towards Jerseyville. Deputy Ayers was in Jerseyville when he received all this information. A few minutes after that, he pulls over a black truck with All Types Landscaping across the back and a black dog in the back headed eastbound on Route 16 in Jerseyville. There was one person in the car, just a defendant in the truck. There was no other person and the truck was a single cab. However, all other more specific details were met. The defendant filed a motion to quash and petition to rescind, which were both granted by the trial court. The trial court relied on this court's decision, People v. Schaefer, specifically on the four factors to consider when an anonymous tip is provided and whether that is sufficiently reliable or not. The trial court noted that a less rigorous standard is required when the tip is driving under the influence or reckless and erratic driving, but found that there was no report of either driving under the influence or reckless driving here. The trial court's findings were error and the granting of the motion and petition were error. First, the factors relied on in Schaefer by the trial court here were based on an anonymous tip. Here it was a non-anonymous tip. Both the mother and the minor were identified along with their phone number. Again, although the factors in Schaefer were for an anonymous tip, they still weigh heavily, in this case, towards the state, all four factors. The first factor is whether the quantity and detail of the information was such that the officer may be certain that the vehicle stopped is the one identified by the caller, which I think is the main sticking point of this appeal. Here the caller stated that it was a black truck, again, with all types landscaping across the back and a black dog in the back, headed eastbound on Route 16 towards Jerseyville. All of these descriptions were met. The inconsistencies were that their defendant was alone and, however, Deputy Ayers or any police officer, reasonable police officer in Deputy Ayers' position, would find it much more reasonable that in the short minutes between the calls and the stop that someone had gotten out of the car and that any backseat or talk by the minor was either a mistake of seeing the dog at some point, maybe being a child, or the other person that the mother reported seeing. However, all the other much more specific details made it certain that there was no other way that exact truck, at that exact time, was traveling in that direction in that town. It was certain that that was the truck that was reported as recklessly driving. The second factor is the time interval between this court and People v. Ewing, which I'll talk about a little bit more. There was 11 minutes between the call and the defendant being stopped, and that was deemed short enough. Here, at most, there were 12 minutes. However, there's some discrepancy between the initial call and the stop. At most, it would be between 12 minutes. There was also another call, which was a few minutes later, which, of course, would mean it would be less time than in Ewing. Additionally, the trial's court's order shows that the initial call was at 539, while Deputy Ayers' ticket in the common law record shows that the stop was at 545. No matter what, the time interval, in this case, was short. The third factor is whether the tip's based on contemporaneous eyewitness observations. Here, two people both witnessed the truck spinning in the road, in the public road. The mother also added that the truck continued to hot rod up and down the street, although this is a vague accusation, not really specific of any recklessness in itself. Taking the spinning in circles, it can be assumed that this was not an isolated incident of reckless driving and that it was continuing. The final factor is whether the tip had sufficient detail to permit the reasonable use of the tip. The tipster actually witnessed what she described, or he. This court noted in Schaefer, an informant who is a chance witness is much less likely to have a malicious hidden agenda than an informant with a source of inside information. Here, they did not know a defendant. They did not even know who was driving the car. There's nothing in the record that suggests they had any sort of acts to grind against the defendant or anything like that. This court in Ewing also made a great observation regarding the reliability of these tips. Quote, in both Schaefer and here, the citizens were sufficiently concerned about the condition of these drivers that the citizens overcame any reluctance to call the police. And they apparently did so out of a sense of the danger the drunk drivers posed to the community. For these citizens to call the police is truly extraordinary. When receiving such a call, the police may properly conclude that the circumstances must be pretty serious, at least in the mind of the citizen calling for that citizen to make such a call, thus adding to the credibility the police may give to the identified caller. Here, it was not a drunk driving report. It was a reckless driving report. And of course, Ewing also includes reckless and erratic driving in those reports that need less rigorous confirmation of reliability. Again, these hipsters called twice. So not only did they overcome the reluctance to call the police once, they overcame the reluctance to call the police twice. The police could properly attribute the credibility added to that, and also attribute to the dangerousness of the reckless driving happening at that point. So even though Schaefer factors were for anonymous tips, they all still weigh heavily in this non-anonymous tip in this case. So the trial court also erred in finding that there was no reckless driving. It's hard to imagine spinning in the middle of the road on a public roadway not being anything but reckless driving. Additionally, there was some other reporting that the truck continued to hot rod up and down the road, indicating or suggesting at least that this was an isolated incident of reckless driving. The most disruptive case is this court's People v. Ewing, where an anonymous caller reports a reckless, erratic, or drunk driver. I think it's important to realize that this court, I think it was Justice Myers Coff, included reckless and erratic along with drunk driving tips. The police must be permitted to stop the reported vehicle without having to question the caller about the specific details that led him or her to call, so long as the non-anonymous tip has a sufficient indicia of reliability. Reckless and erratic drivers are likely impaired, and such drivers present an imminent danger to other motorists. A police officer shouldn't have to wait to observe such driver-permitted traffic violation or obtain specific details supporting the caller's conclusion before stopping the vehicle. The reasoning there is obvious and sound. If an officer has to wait and observe another traffic violation, this violation could very well be an accident that results in an injury or death to the driver or another person or both. Again, the Ewing court said reckless and erratic drivers are likely impaired. That was the case here. The defendant tries to distinguish Ewing by stating that the details provided in Ewing were more specific than here. The details in Ewing were different. They included the license plate number and make and model of the car. However, the details here were just as specific to make sure that any stop was certain. The very unique and specific back window decal along with a black dog in the back heading eastbound on Sprout 16, there can be no question that Deputy Ayers pulled over the correct vehicle. Of course, there could have been another car in Ewing. Anything is possible. They could have switched the license plates or something in the short minutes between the call and the stop. So since there's a less rigorous standard needed here because it was a tip of reckless driving, the trial court erred in granting the defendant's motion. Thank you, counsel. Mr. Lorton. May it please the court. Counsel. My name is Leif Lorton. I'm with the law firm of Whitman and Lorton located in Jerseyville, Illinois. I'm an attorney for the Apple League, Seth Hansen. Here, Deputy Ayers did not observe Seth Hansen operating his vehicle in an erratic manner, nor did Deputy Ayers observe any traffic violations. This case comes down to whether Deputy Ayers was certain the vehicle and occupant he stopped was the vehicle and occupants reported by Carson and Pam Smith. Well, let me ask you about that. The description, among other things, was a black truck heading eastbound on, was it Route 16? Correct, Your Honor. With a decal sticker in the rear window reading, All Types Landscape. Within a few minutes of receiving that report, he saw a black truck heading eastbound on Route 16 with the sticker in the rear window reading, All Types Landscape. Am I right? Trying to dog him. Forgetting about the dogging. So I suppose here's the question. Is it your position that this officer could not reasonably believe that this was the vehicle about which he had received the report and make a stop? Two points, Your Honor. First, the child and the mother indicated there was a backseat in the vehicle. And, of course, the officer indicated that before he pulled over the vehicle there was no backseat, nor were there any other occupants within the vehicle. So, yes, as it's set forth in the first factor, the officer must be certain that that's the vehicle which was reported. Must be certain? That's what it indicates. What is this, like proof beyond the reasonable doubt? I don't think it's proof beyond the reasonable doubt, obviously, Your Honor. It's the reasonableness of the case. So it wasn't that they had no backseat. But is it your argument to this court that the sticker with the All Types Landscaping is not, frankly, enough in itself to justify the police officer concluding this is the same car? Well, if you just assume, if you take out the fact that there were other occupants. There are inconsistencies. There are inconsistencies. But the consistency. There is consistency, yes, Your Honor. Why doesn't that consistency trump everything? A black trunk with a sticker in the back window saying All Types Landscaping. Well, I think there could be multiple vehicles that have the same sticker in the back, I believe. Well, if you had produced any evidence that there were, in fact, other vehicles, I think your argument would be somewhat stronger. The officer did indicate in his testimony that he is aware of other vehicles with the All Type Landscaping in the rear. He has seen that before. Vehicles other than Mr. Hansen. Other than more black trucks? He didn't indicate whether it was a black truck or not, Your Honor. No, he did not. If we disagree with the idea that the officer stopping this truck, If we find the officer stopping this truck reasonable based upon the description he received, do you lose? I don't believe so, Your Honor. Then what else do you win on? Let's assume the officer stopping this truck was appropriate. And that goes to my, well, I would argue that the time interval between the stopping of the truck and the initial report is great in this circumstance, because it's clear that there were intervening circumstances here. Six minutes? No, it was more than six minutes, Your Honor. Where was it? The initial report was between 12 minutes and, from the first report and the officer stopping the vehicle, it's 12 minutes. The officer was actually at H&R Block completing his taxes. Why does any of that matter? Well, I think it matters because it goes to the immediacy. If the officer would have immediately, the imminent danger here, would have immediately responded to Fielding, he would have then observed the vehicle, which was initially reported, with the number of occupants. So 12 minutes is too long? I would argue in this, look at the totality of the circumstances, Your Honor. In this case, it's clear that it's not disputed that at least one passenger got out of the car. Okay? There is no description concerning the driver himself. It's just merely that there was a vehicle. Well, isn't the issue in this case whether the officer stopped the car appropriately? I believe so. Is there any other issue that we have to address? I don't believe so, Your Honor. I'm addressing that within the facts. So we have, from the time the report came in, 12 minutes until the officer stopped the car, and that diminishes the legitimacy of the basis for the stop? I believe the heart of the matter here, when you look at the totality of the circumstances, it was enough time for clearly the occupants of the vehicle to change. As we know, a car cannot commit the offense. It's the driver who commits the offense. And what's different, this case is different from Ewing and from Schaefer, in that there was immediate action taken by the officers in those two cases. Okay? So they could verify that. Well, Schaefer, they've practically solved. But that wasn't the case in Ewing. Well, Ewing, in my reading of the case, in Ewing, the Crestline vet employee contacted dispatch. And dispatch, immediately after getting off the phone with the Crestline employee, sent out a dispatch giving the information. The arresting officer, who was eating lunch at the time, immediately cut off his lunch, went to a spot on Route 16, and there was the individual. How much time passed? It indicates in Ewing that 11 minutes passed. However, the description in Ewing of the officer was able to run the license plates, verify the driver was James Ewing, and then also the make and model of the car fit the description as well. I thought your argument was that the time wasn't good enough. But the time in Ewing is about the same as here. What the court says in Ewing as well is you have to look at this under the totality of the circumstances. So there could have been another black truck with a dog in it, driving eastbound on Route 16, with the all types landscaping, and they changed drivers within that 12-minute period, and therefore it wasn't reasonable for the cop to stop the car. That's your argument? Well, I think if we assume that it's the same match, Your Honor. The same what? That the description, if we assume that the vehicle that Mr. Hansen was driving fit the description. Can there be a doubt that it fits the description? Yes, there could be a doubt. I have no doubt. Okay. I don't think it's even close to reasonable that there's a doubt, Counsel. I'm astonished you convinced Judge Pistorius of this. He must be some kind of magician. No, I'm no magician, Your Honor. Well, I don't understand it. I've seen lots of cases. I'd be less convinced about a claimed license plate number, because those things are capable of being misread, but I've never seen a case, I've heard lots of cases, with something this dramatic as a marker, the all types landscaping sticker. I mean, the notion that somehow we're going to have confusion on which truck it is, I just can't understand it. Then on the issue of the fact of the matter that there was a change in occupancy in the vehicle, that lends credibility to the defendant's argument that there are intervening circumstances, which could have occurred. That might affect the question about is this evidence sufficient to prove guilt beyond a reasonable doubt, of the guy who was driving 12 minutes earlier, but this is a question of was it reasonable to make a Terry stop? And I appreciate that, Your Honor. From the standpoint, though, this Court set forth, and I hate to repeat myself, I apologize, but we're looking at the totality of the circumstances. Look at all the facts. And in this case, there was an indication, unlike in Ewing, where they said, in Ewing it was clear there was two occupants in the vehicle. And that, when the officer pulled up behind the vehicle in Ewing, he confirmed the fact that there were two occupants in the vehicle. What's different in this case is it's almost like we're looking at the vehicle as the... That's precisely the point. We're not concerned at this point with who is driving the vehicle. It's the vehicle. We want to stop that vehicle and let's see who's driving and what's going on. We don't care when the cop makes a... It might have been night. Maybe no one could see anything about who was driving the vehicle. Somehow it's the identification of the driver which is the key. The identification of the driver is, at best, a factor if it can be made, or the occupants. It's the vehicle which has to be stopped. That's where the focus is. Once you understand it's the vehicle, how is this vehicle not reasonably stopped? The argument that can be made by the defense your honor is that the vehicle... The only other distinguishing factor, if we throw the occupants out of the equation, is the fact that the vehicle did not have a backseat. That the description of the vehicle as to its cab did not match the description of the vehicle as reported by Pam and Carson Smith. That would be the only distinguishing factor here if we were to say we're not going to take into consideration the occupants of the vehicle as well. You made a motion to suppress. Is the trial court granted? Correct. And based upon the trial court's ruling on the petition to rescind. Go ahead. I would like to touch on the argument made by the state, which indicates that in this case here we had an initial report of reckless driving. And there was a time span between six to seven minutes before the next report by the child, which indicates that the black truck that I reported earlier is headed towards Jerseyville. At that time he made no mention whether the occupants changed, whether that vehicle was driving in a reckless manner. And even if we assume that, as the court has here, even if we assume that there was an ongoing offense of reckless driving, they still have to look at whether or not the description of the vehicle meets that of the report. And I don't want to beat up that issue again. We've had quite a bit of discussion on that. My main point here is that the intervening circumstances, which clearly allowed the occupants to change when the officer pulled them over, there was no backseat, nor were there. The only occupant of the vehicle was Mr. Hansen. Further, it indicates on the audio recording that Mr. Hansen was actually stopped in his driveway when he arrived at his house. So with that said, he did not continue to pose an imminent danger to the public. Therefore, if the officer wanted to sit on him and then get an arrest warrant for the complaint that was made by Carson and Pamela, he could have done so. I guess my analogy is, Your Honor, if we assume that dispatch received a report of a public disturbance on Carpenter Street in Jerseyville, and the tipster said, we have a 6'5 male weighing over 300 pounds creating a disturbance on Carpenter Street. He's wearing a black jacket with all types of landscaping printed on the back. He's also walking a black dog, and he's with another individual. If we're to accept the State's reasoning, an officer, after meeting with his tax professional for over 12 minutes at H&R Block, could then stop a man who's 5'8, wearing a black jacket that says all types of landscaping, who's alone walking his dog down Carpenter Street. And I don't believe such a seizure is reasonable under the circumstances. Based upon that argument, Your Honor, I would ask you to affirm Judge Pistorius' decision at the trial court. Thank you. Thank you, counsel. Mr. McNeil, anything in rebuttal? First, I want to distinguish that analogy. There is a less rigorous standard required when the report is reckless and erratic driving. I don't think there's a question that it was a report of reckless driving here. How the trial court made that finding is beyond me. Also, Deputy Agers testified that he did not see any other trucks matching that description that night. He may have testified that there was all types of landscaping across the back window in other cars. He did not mention any other colors of the truck, or if there were constant black dogs in the back of all those trucks. Also, this is the first I'm hearing of the indication that the defendant was in this driveway. I don't think the police were responsible for knowing that that was his driveway and that he was no longer going to drive. I don't think that they need to make that prediction at that time. Other than that, I just want to stress that there is a less rigorous standard needed for reliability of non-anonymous case when the report concerns reckless driving. Thank you, counsel. Thank you, Mr. McNeil. I'm advising the dean to recess for a few moments.